UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| DELL F. SUMMERS,<br><br>Plaintiff,<br><br>v.<br><br>LOUISVILLE METRO GOVERNMENT, *et al.*<br><br>Defendants. | ) | Civil Action No. 3:23-CV-189-CHB<br><br>**MEMORANDUM OPINION AND ORDER** |

*** *** *** ***

This matter is before the Court on Defendant Louisville Metro Government's Motion for Summary Judgment. [R. 92]. Plaintiff sought and received an extension of time up to and including October 19, 2026 to respond to the motion. [R. 94]; [R. 95]. To date, Plaintiff has failed to file a response, and the Court therefore understands the motion is unopposed. Regardless, for the reasons set forth herein, the Court has considered the merits of the motion and will grant summary judgment in favor of Louisville Metro Government.

## I. BACKGROUND

On April 17, 2023, Plaintiff, then a pretrial detainee, filed this 42 U.S.C. § 1983 action against Louisville Metro Government, Louisville Metro Department of Corrections, and WellPath. [R. 1]. Relevant to the pending motion, Plaintiff alleges that he was robbed while an inmate at Louisville Metro Department of Corrections but that the corrections officers did nothing to prevent the robbery or rectify the issue. *See* [R. 1-1 (Statement of Facts/Claims)]. Plaintiff asserts that because of the design of Louisville Metro Department of Corrections and the lackadaisical attitudes of its staff, robberies, assaults, and intimidation tactics are the norm. *Id.* Plaintiff maintains that he felt "in imminent danger of injury to life, body, mind, and/or property" after the robbery and requested transfer to a different cell. *Id.* at 1. Plaintiff further alleges that despite

being transferred to a different cell, several inmates in his new cell threatened his life on October 30, 2021. *Id.* Plaintiff contends that he requested to be removed from the cell immediately and he "needed to check out," but two correctional officers denied his request and threatened him. *Id.* at 2. While being removed from that cell into protective custody by another correctional officer, the inmates threatened, "We're going to find you!" and "You're not safe anywhere!" *Id.* Plaintiff further alleges that when LMDC tried to return Plaintiff to a "Max Cell" on multiple occasions and he refused for fear for his life, he was placed into solitary confinement—"the hole"—and was issued a disciplinary complaint against him. *Id.*

Plaintiff further states that during his incarceration, he has been subjected to sexual harassment by a homosexual inmate and observed numerous violent fights which were not prevented, curtailed, or properly addressed by Louisville Metro Government, including one that resulted in the death of an inmate. *Id.* at 3–4. Plaintiff states that Louisville Metro Government regularly failed to abide by the "keep away" list of those inmates that cannot be placed in a cell together. *Id.* at 9. Plaintiff further claims that between May 2022 and December 2022, he "saw and heard" a corrections officer threaten that he would spray mace under a cell door. *Id.* at 3. Plaintiff also asserts that between May 2022 and September 2022, a female corrections officer engaged in sexual harassment and voyeurism of Plaintiff and other inmates in "the hole." *Id.* Plaintiff asserts that LMDC staff and leadership are aware of this unsafe conduct, but LMDC did not take reasonable measures to safeguard inmates such as Plaintiff. *Id.* at 2.

Plaintiff also alleges that that in May 2022 he was experiencing severe depression, anxiety, PTSD, and related medical conditions. *Id.* at 9. Plaintiff states that he submitted health services request forms informing the medical staff of his severe depression and pleading for help and therapy. *Id.* at 6. Despite these conditions, Plaintiff represents that he merely received pamphlets

from the nurse. *Id.* at 6, 9. Plaintiff maintains that he was never offered the chance to speak with a counselor, therapist, or mental health professional. *Id.* at 6. Plaintiff alleges that because he did not "receive any competent or caring mental health assistance," he attempted suicide on four occasions. *Id.* at 5–6.

Plaintiff also states that in the summer of 2022, a WellPath nurse visited inmates in "the hole"; however, the nurse would merely knock, ask if the inmate was okay, and then immediately move on before awaiting an answer from the inmate even if the inmate was screaming or crying. *Id.* at 5. Additionally, Plaintiff asserts that he often did not receive prescribed medications. Plaintiff further contends that he and other inmates are frequently not provided opportunities to obtain or turn in health services request forms, the requests are often denied or ignored, and WellPath staff are more often than not hateful and rude. *Id.* at 9. Plaintiff also states that he has witnessed numerous attempted suicides causing extreme emotional distress to him and other inmates. *Id.* at 6.

Regarding the conditions of his confinement, Plaintiff alleges that Louisville Metro Government failed to establish a safe, sanitary, and healthy environment in the detention center in violation of his constitutional rights. *Id.* at 2–3, 9–11. Specifically, Plaintiff alleges that he was placed in an overcrowded and unsanitary cell, was denied properly laundered bedding and clothing, denied recreation, endured unsanitary and unsafe food, was denied a hygiene kit and a thermal shirt to keep warm, was subjected to feces-filled toilet that would not flush, was denied toilet paper, slept on hard plastic shells called "boats" on the floor, and was placed in poorly designed cells with "emergency buttons" that often do not work or are not answered. *Id.* Plaintiff further alleges that Louisville Metro Government ignores all serious conditions-of-confinement issues and that it is understaffed by eighty correctional officers. *Id.* at 10.

On September 11, 2023, after conducting an initial review pursuant to 28 U.S.C. § 1915A, the Court dismissed the claims against the Louisville Metro Department of Corrections, and that defendant was terminated from this action. [R. 13]. The Court allowed Plaintiff's Fourteenth Amendment claims regarding the failure to protect (i.e., deliberate indifference to inmate safety), deliberate indifference to serious medical needs, and conditions of confinement to proceed against Louisville Metro Government. *Id.* The Court also permitted Plaintiff's Fourteenth Amendment claim for deliberate indifference to serious medical needs to proceed against WellPath. *Id.* All other federal and state law claims against Louisville Metro Government and WellPath were dismissed. *Id.*

Defendant WellPath eventually filed for bankruptcy and was dismissed as a defendant, with the WellPath Liquidating Trust substituted as a nominal defendant. [R. 81]. Meanwhile, the case proceeded through discovery. On August 14, 2026, Louisville Metro Government filed the pending Motion for Summary Judgment.[1] [R. 92]. Pursuant to the Court's Local Rules, any response was due on or before September 4, 2026. *See* LR 7.1(c). However, on August 25, 2026, Plaintiff filed a notice of change of address. [R. 93]. On September 16, 2026, he filed a request for an extension of time to respond to the motion, stating that he had recently moved and had not received a copy of the motion. [R. 94]. After Louisville Metro Government failed to respond, the Court construed the motion as unopposed, granted the request for an extension of the response time, and ordered the Clerk's Office to resend a copy of the motion to the plaintiff. [R. 95]. Pursuant to that order, Plaintiff was required to respond to the motion on or before October 19, 2026. *Id.* As noted, Plaintiff failed to file a response. The Court therefore construes the motion as unopposed, but regardless, will consider the merits of the motion below.

---

[1] The Court notes that, at the time the motion was filed, the fact discovery deadline has not yet passed. However, that deadline passed on September 30, 2026. [R. 91].

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a court may grant summary judgment if it first finds that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Winkler v. Madison Cnty.*, 893 F.3d 877, 890 (6th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the initial burden "of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Anderson*, 477 U.S. at 256. That burden may be satisfied by demonstrating that there is an absence of evidence to support an essential element of the non-moving party's case for which he or she bears the burden of proof. *Celotex Corp.*, 477 U.S. at 323.

Once the moving party satisfies this burden, the non-moving party thereafter must produce "specific facts, supported by the evidence in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial." *Bill Call Ford, Inc. v. Ford Motor Co.*, 48 F.3d 201, 205 (6th Cir. 1995) (citation omitted). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. However, the Court is not obligated to "search the entire record to establish that it is bereft of a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001). Rather, "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *Id.* Ultimately, if the record, taken as a

whole, could not lead the trier of fact to find for the nonmoving party, then there is no genuine issue of material fact and summary judgment is appropriate. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587(1986) (citation omitted).

As to unopposed motions for summary judgment, the Sixth Circuit has said that "[e]ven when faced with an unopposed motion for summary judgment, the district court cannot grant a motion for summary judgment without first considering supporting evidence and determining whether the movant has met its burden." *Barber v. Cunningham*, No. 2:23-cv-10095, 2024 WL 1453212, at *1 (E.D. Mich. Mar. 7, 2024) (quoting *Byrne v. CSX Transp., Inc.*, 541 F. App'x 672, 675 (2013)) (internal quotation marks omitted). "That said, when a motion for summary judgment is unopposed, '[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record.'" *Id.* (quoting *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 405 (6th Cir. 1992)). Instead, "[t]he court may rely on the moving party's unrebutted recitation of the evidence in reaching a conclusion that facts are uncontroverted and that there is no genuine issue of material fact." *Id.* (quoting *Jones v. Kimberly-Clark Corp.*, 238 F.3d 421, at *3 (6th Cir. 2000)) (internal quotation marks omitted).

## III. ANALYSIS

### A. Failure to Identify a Policy or Custom to Support *Monell* Liability

Louisville Metro Government first argues that Plaintiff cannot prove essential elements of the *Monell* claims against it. [R. 92-1, pp. 10–11]. As explained in *Monell v. Department of Social Servies*, 436 U.S. 658 (1978), a local government "cannot be held liable under § 1983 on a respondeat superior theory," but instead "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted

and promulgated by that body's officers." *Dubose v. City of Knoxville*, No. 3:22-cv-139, 2023 WL 3766813, at *9 (E.D. Tenn. June 1, 2023) (quoting *Monell*, 436 U.S. at 690–91). Thus, "to impose municipal liability for a constitutional violation, the violation must have been the result of a governmental 'policy' or 'custom.'" *Bruck v. Petry*, No. 5: 21-152-DCR, 2022 WL 2109187, at *10 (E.D. Ky. June 10, 2022) (quoting *Monell*, 436 U.S. at 694–95). The plaintiff "must identify the policy, connect the policy to the government entity, and show that the injury was incurred because of the execution of that policy." *Id.* (citation omitted). "*Monell* claims that survive the summary judgment stage are 'exceedingly rare' and must 'eclipse a high bar.'" *Id.* (quoting *Hanson v. Madison Cnty. Det. Ctr.*, 736 F. App'x 521, 541–42 (6th Cir. 2018)).

In the present case, the defendant argues that "Plaintiff has been unable to identify what municipal policy or custom he claims to be the moving force of the violation of his constitutional rights." *Id.* at 11. For support, Louisville Metro Government points to its various discovery requests, in which it requested that Plaintiff identify any written and/or unwritten policies, procedures, or customs upon which he relied. *Id.* at 8–9; *see also* [R. 92-3]; [R. 92-4]. Beyond making general assertions that the defendant "maintained written policies, practices, and customs that fostered an environment of deliberate indifference to inmate safety," Plaintiff's discovery responses do not identify any specific policy, practice, or custom. [R. 92-4]. Instead, Plaintiff asserts in his discovery responses that "[t]he specific written documents that formalize these unconstitutional policies and practices are in the exclusive possession, custody, and control of Defendant [Louisville Metro Government] and have been demanded in Plaintiff's discovery requests." *Id.* at 13. However, the record reflects that, after Plaintiff made this assertion in his written discovery responses, Louisville Metro Government provided various documents related to its training and policies. *See* [R. 92-8]; [R. 92-9]. The fact discovery deadline has since passed, *see*

[R. 91], and Plaintiff does not argue that any additional discovery is needed, nor does he dispute that all relevant documentary evidence was provided to him. Indeed, as noted, Plaintiff has wholly failed to respond to the motion for summary judgment, despite obtaining an extension of the time to do so. In short, then, Plaintiff has "fail[ed] to identify *any* specific policy or custom that caused his injuries." *Lovell v. Clermont Cnty. Sheriff's Office*, No. 1:23-cv-114, 2026 WL 16447, at *26–27 (S.D. Ohio Jan. 2, 2026) (granting summary judgment where the plaintiff failed to respond to some of the defendants' *Monell*-related arguments and failed to identify a policy or custom). The Court will therefore grant summary judgment on the remaining claims against Louisville Metro Government, each of which seeks to impose *Monell* liability against this defendant. *See id*; *D.D. v. Scheeler*, No. 1:13–cv–504, 2015 WL 892387, at *13 (S.D. Ohio Mar. 3, 2015) ("[The] [p]laintiffs have come forward with no evidence of an unconstitutional policy or procedure to support their claim, and summary judgment is therefore appropriate for the [d]efendants on the *Monell* claim.").

**B. Failure to Exhaust Administrative Remedies**

Louisville Metro Government next argues in the alternative that Plaintiff has failed to exhaust his administrative remedies with respect to his § 1983 claims relating to his prison conditions.[2] [R. 92-1, pp. 12–13]. The Prison Litigation Reform Act "requires prisoners to exhaust all available administrative remedies before filing an action related to prison conditions under § 1983." *Taylor v. Wright*, No. 22-1175, 2022 WL 19073867, at *1 (6th Cir. Dec. 30, 2022) (citing 42 U.S.C. § 1997e(a)). To do so, the prisoner must "[take] advantage of each step the prison holds out for resolving the claim internally and by following the critical procedural rules of the prison's

[2] Louisville Metro Government's memorandum in support of its motion appears to cut off mid-sentence at the conclusion of its exhaustion argument. [R. 92-1, p. 13]. Regardless, the Court does not require any further briefing from the defendant to resolve the pending motion.

grievance process to permit prison officials to review and, if necessary, correct the grievance on the merits in the first instance." *Id.* (quoting *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010)) (cleaned up); *see also Barber*, 2024 WL 1453212, at *2.

The failure to exhaust administrative remedies is an affirmative defense, and the defendant has the burden to plead and prove the defense by a preponderance of the evidence. *See Barber*, 2024 WL 1453212, at *2 (citation omitted). A prisoner countering a failure-to-exhaust motion "must offer competent and specific evidence showing that he indeed exhausted his remedies, or was otherwise excused from doing so." *Id.* (quoting *Sango v. Johnson*, No. 13-12808, 2014 WL 8186701, at *5 (E.D. Mich. Oct. 29, 2014)) (internal quotation marks omitted). When summary judgment is granted due to a failure to exhaust, the decision is not "on the merits," and therefore requires dismissal without prejudice. *Id.* (citation omitted).

Here, Louisville Metro Government has provided a copy of its grievance procedures. [R. 92-5]. The policy includes a non-exhaustive list of "grievable issues," including "[p]ersonal and social services or needs," "[p]ersonal action by staff," "[h]ealth care concerns, not related to the specific treatment protocol of an inmate," and sexual abuse and harassment. *Id.* at 3. The policy further explains the filing process, by which an inmate completes a grievance form and can ultimately appeal the outcome of that grievance. *Id.* at 5–6. Louisville Metro Government argues that Plaintiff failed to utilize the grievance procedures with respect to his current claims.

Because the defendant has shown that a generally available remedy existed for claims like Plaintiff's, the burden shifts to Plaintiff "to show that the generally available administrative remedies were effectively unavailable to them." *Morgan v. Kentucky*, No. 3:17-CV-474-CHB, 2020 WL 6929558, at *9 (W.D. Ky. Nov. 24, 2020) (citation omitted). Plaintiff has failed to respond to the motion for summary judgment, however, and has therefore failed to satisfy his

burden. *See Hickey v. Trousdale Turner Correctional Complex*, No. 3:20-00474, 2021 WL 3930734, at *4 (M.D. Tenn. Sep. 2, 2021) ("[The] [p]laintiff has not set forth any evidence . . . rebutting [the] [d]efendants' contention that he had not pursued and exhausted his available administrative remedies prior to filing his lawsuit. Accordingly, [the plaintiff's] lawsuit should be dismissed in its entirety because of his failure to comply with the mandatory exhaustion requirement of the [Prison Litigation Reform Act]."). As such, the Court finds that Plaintiff has failed to exhaust his administrative remedies with respect to his § 1983 claims against Louisville Metro Government, to the extent they relate to prison conditions. Accordingly, even if the Court declined to grant summary judgment in the defendant's favor due to Plaintiff's failure to identify a policy or custom to support his *Monell* claims, the Court would still dismiss these claims without prejudice for failure to exhaust.

## IV. CONCLUSION

For the reasons set forth above, the Court will grant Defendant Louisville Metro Government's Motion for Summary Judgment. [R. 92]. As noted, the Court grants summary judgment in the defendant's favor on each of the remaining claims against it because Plaintiff has failed to identify a policy or custom to support his theories of municipal liability. However, in the alternative, the Court would dismiss these claims without prejudice for failure to exhaust administrative remedies. Accordingly, the Court being sufficiently advised, **IT IS HEREBY ORDERED** as follows:

1. Defendant Louisville Metro Government's Motion for Summary Judgment, [**R. 92**], is **GRANTED**.

This the 28th day of October, 2026.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF KENTUCKY

cc: Plaintiff Dell F. Summers, *Pro Se*
Counsel of Record